1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JAVIER SANTAMARIA,

    Petitioner,

  v.

J.N. KATAVICH, Warden,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 12-10478 JC

MEMORANDUM AND ORDER
DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND DISMISSING
ACTION WITH PREJUDICE

## I.   SUMMARY

  On December 7, 2012, Javier Santamaria ("petitioner"), a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") pursuant to 28 U.S.C. § 2254.  Construed liberally and in light of petitioner's state court briefing, the Petition challenges petitioner's conviction in Los Angeles Superior Court on the following remaining grounds:[1] (1) the evidence was insufficient to support petitioner's assault with a deadly

---

[1]Although the Petition originally also claimed that the trial court improperly permitted the gang expert to opine that petitioner acted for the benefit of a gang (Claim 2) and that petitioner's trial counsel was ineffective in multiple respects (Claim 3), such claims have been withdrawn and/or dismissed.  See Docket Nos. 21, 23, 24.

weapon conviction (Claim 1); and (2) the evidence was insufficient to support petitioner's attempted robbery conviction and his trial counsel was ineffective in failing adequately to explain that petitioner was intoxicated and did not intend to rob the victim (Claim 4).

On October 17, 2013, respondent filed an Answer and a supporting memorandum ("Answer").[2]  Petitioner did not file a reply and the deadline to do so has expired.

The parties have consented to proceed before the undersigned United States Magistrate Judge.

For the reasons stated below, the Petition is denied, and this action is dismissed with prejudice.

**II.   PROCEDURAL HISTORY**

On June 8, 2010, a Los Angeles County Superior Court jury convicted petitioner of the attempted second degree robbery of Jesus Estrada and the assault of Jose Garate with a deadly weapon.  (CT 73-76, 150-51; RT 437-40).  The jury also found true allegations that (1) petitioner committed both offenses for the benefit of, at the direction of, and in association with a criminal street gang, with the specific intent to promote, further, and assist in criminal conduct by gang members ("gang enhancements"); and (2) petitioner personally used a deadly and dangerous weapon.  (CT 150-51; RT 437-40).  After petitioner waived his right to a jury trial on prior conviction allegations and the court heard evidence regarding the same, the court found that petitioner had suffered one prior serious felony conviction and had served three prior prison terms.  (CT 229-30; RT 434-36, 457).  On July 15, 2010, the court sentenced petitioner to a total of sixteen years in state prison.  (CT 231-35; RT 466-67).

---

[2]Respondent also relies on documents lodged on February 19, 2013 and October 17, 2013 ("Lodged Doc."), including the Clerk's Transcript ("CT") and the Reporter's Transcript ("RT").

1   Petitioner thereafter appealed to the California Court of Appeal, raising two
2   claims:  (1) the evidence was insufficient to support petitioner's assault with a
3   deadly weapon conviction (Claim 1 herein); and (2) the gang enhancements must
4   be reversed because the gang expert usurped the jury's function by opining as to
5   petitioner's  purpose.  (Lodged Doc. 10).  On October 6, 2011, the Court of
6   Appeal affirmed the judgment, rejecting both of petitioner's claims in a reasoned
7   decision.  (Lodged Doc. 1).

8   On November 14, 2011, petitioner filed a petition for review in the
9   California Supreme Court, asserting the same two claims raised in the Court of
10   Appeal.  On December 21, 2011, the California Supreme Court denied review
11   without comment.  (Lodged Doc. 3).

12   On June 5, 2012, petitioner constructively filed a habeas petition in the Los
13   Angeles County Superior Court, claiming ineffective assistance of trial counsel.
14   (Lodged Doc. 13).  On July 6, 2012, the court denied such petition based on
15   petitioner's failure to establish a prima facie case for relief.  (Lodged Doc 4
16   Attachments).

17   On August 15, 2012, petitioner constructively filed a habeas petition in the
18   California Court of Appeal, claiming, among other things, that the evidence was
19   insufficient to support his attempted robbery conviction and that his trial counsel
20   was ineffective in failing to explain that petitioner was intoxicated and did not
21   intend to rob anyone (Claim 4 herein).  (Lodged Doc. 4).  The Court of Appeal
22   denied such petition without comment.  (Lodged Doc. 5).

23   On September 7, 2012, petitioner constructively filed a habeas petition in
24   the California Supreme Court, asserting the same claims raised in the habeas
25   petition filed in the Court of Appeal.  (Lodged Doc. 6).  On February 13, 2013, the
26   California Supreme Court denied such petition with citations to People v. Duvall,
27   ///
28   ///

3

1  9 Cal. 4th 464, 474 (1995),[3] In re Waltreus, 62 Cal. 2d 218, 225 (1965),[4] In re

2  Swain, 34 Cal. 2d 300, 304 (1949),[5] and In re Lindley, 29 Cal. 2d 709, 723

3  (1947).[6]

4  **III.   FACTS**

5        Since petitioner challenges the sufficiency of the evidence to support his

6  convictions, the Court has independently reviewed the state court record.  See

7  Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).  Based on its independent

8  review of the record, the Court adopts the following factual summary from the

9  "Statement of Facts" section of the California Court of Appeal's opinion on direct

10 review (replacing "appellant" with "petitioner") as a fair and accurate summary of

11 the evidence presented at trial.  (Lodged Doc. 1 at 2-4).

12       On September 19, 2009, between 6:00 p.m. and 6:30 p.m., Jesus Estrada,

13 Jose Garate, Sergio Gomez, Sergio's little brother, and "Noe" were in the

14 driveway of Estrada's house on the 1100 block of 45th Street in Los Angeles.

15 Estrada and Garate were standing side-by-side next to a car in the driveway while

16 Noe was hooking up a car stereo in a second car in the driveway.  Gomez and his

17 little brother were in the car with Noe.

18       Petitioner approached Estrada and Garate, and when he was approximately

19 two to three feet away, he asked Estrada, "Where you from?"  Estrada responded

20 _____

21       [3]The Ninth Circuit has read the California Supreme Court's denial of a habeas petition
   with citations to Duvall and In re Swain, 34 Cal. 3d 300 (1949) as, in effect, the grant of a
22 demurrer, i.e., a holding that the petitioner did not plead facts with sufficient particularity.  Cross
   v. Sisto, 676 F.3d 1172, 1177 (9th Cir. 2012).
23

24       [4]"Waltreus holds that issues actually raised and rejected on appeal cannot be raised anew
   in a state petition for writ of habeas corpus."  Carter v. Giurbino, 385 F.3d 1194, 1198 (9th Cir.
25 2004), cert. denied, 543 U.S. 1190 (2005).

26       [5]See supra note 3.

27       [6]"Lindley stands for the California rule that a claim of insufficiency of evidence can only
28 be considered on direct appeal, not in habeas proceedings."  Carter, 385 F.3d at 1196.

that he doesn't "gangbang." Petitioner said "This is 38" or "I'm from 38th Street," which Estrada understood as "claim[ing] his 'hood." Petitioner then pulled up the sleeve of his long-sleeved shirt and exposed a knife that he was holding against the inside of his arm with the blade facing toward himself. The knife was approximately eight to nine inches long. Estrada was afraid petitioner was going to stab him. He began backing up the driveway away from petitioner. Petitioner also approached Garate and asked, "Where you from?" and exposed the knife to him. Garate responded, and petitioner said to Garate, "This is 38th Street gang." When petitioner exposed the knife, he "shoved it and flicked it out," so that the palm with which he held the knife was facing downward and the blade end was sticking out of his fisted palm.

Garate backed around a car in the driveway and petitioner followed him at a rapid pace. Petitioner got to within three or four feet of Garate, but Garate was able to run to his nearby car and get in. Petitioner knocked on the driver's side window of Garate's car and told him "everything is okay, it was just a joke." Garate drove away.

Petitioner then turned to Estrada, from whom he was separated by a car, and said, "Let me get your chain." Petitioner was still holding the exposed knife in the same hand. Estrada was wearing the gold chain around his neck. Estrada refused to hand over his chain, and petitioner walked away. Estrada went to his house and called the police, who arrived within approximately two minutes.

When petitioner chased after Garate, Gomez had grabbed his little brother and ran into the house. Gomez did not think petitioner's speech sounded slurred, but petitioner's eyes were red and droopy. Petitioner was apprehended in an alley nearby Estrada's house.

The prosecution's gang expert was Officer Manuel Gomez. The gang expert testified that when a gang member approaches someone and asks "Where are you from?," that person is asking whether the other is from a gang. Nongang

5

members typically would not ask this sort of question.  The question is seen as a challenge and is asked for purposes of intimidation.  The gang expert was familiar with the 38th Street gang and had personally spoken to approximately 10 to 15 members and had investigated crimes the members had committed.  He explained that gang members commit crimes in order to instill fear in the community, thereby enhancing the respect and reputation of the gang.  The 38th Street gang's activities include possession of firearms, possession of narcotics, murders, attempted murders, felony vandalism, robberies, and shootings.  The gang's symbols are "38," "thirty-eight" in Spanish, and "TEST" ("T" for thirty, "E" for eighth, and "ST" for street).  It was the gang expert's opinion that petitioner is a member of the 38th Street gang whose moniker is "Stranger" or "Sepo," based on petitioner's having admitted membership to other officers in the gang unit.  His opinion was also based on four of petitioner's tattoos.  Petitioner has a tattoo that says "38 ST," one that says "TEST," one that says "SC LA" (standing for South Central Los Angeles, the area in which the gang's territory falls), and one that depicts a male with a shaved head and glasses holding a firearm, with a "38 ST" above his right eyebrow.  The prosecutor posed a hypothetical to the gang expert using facts identical to those in the case and asked the expert's opinion regarding whether the hypothetical crime was committed for the benefit of the gang.  The expert opined that the crime was committed for the benefit and in furtherance of the gang.

Petitioner's mother, Rita Reynoso, testified in petitioner's case-in-chief.  On the date of the incident, she received a phone call from him at approximately 5:30 p.m.  Petitioner asked that she take him to his girlfriend's house.  Reynoso picked up petitioner at home approximately 10 to 15 minutes after receiving the call.  Petitioner came out of the house staggering and walking like he was going to fall.  He smelled like "he was very drunk," his eyes were bloodshot, and his speech was slurred.  Reynoso drove approximately 15 minutes, and at the intersection of 45th

1   Street and Central Avenue, she stopped with traffic.  Petitioner opened the car

2   door and exited the car.  Reynoso yelled for petitioner to "come back," but he

3   ignored her and walked away.  Reynoso drove off because traffic started to move.

4         Officer Robert Deamer also testified in petitioner's case.  Officer Deamer

5   interviewed petitioner at 7:30 p.m. on September 19, 2009.  He spoke to petitioner

6   for 10 to 15 minutes.  He thought petitioner smelled slightly of alcohol and he

7   appeared very emotional and upset.  Petitioner was crying and kept repeating that

8   he wanted to go home.

9   **IV.   STANDARD OF REVIEW**

10         This Court may entertain a petition for writ of habeas corpus on "behalf of a

11   person in custody pursuant to the judgment of a State court only on the ground that

12   he is in custody in violation of the Constitution or laws or treaties of the United

13   States." 28 U.S.C. § 2254(a).  A federal court may not grant an application for

14   writ of habeas corpus on behalf of a person in state custody with respect to any

15   claim that was adjudicated on the merits in state court proceedings unless the

16   adjudication of the claim:  (1) "resulted in a decision that was contrary to, or

17   involved an unreasonable application of, clearly established Federal law, as

18   determined by the Supreme Court of the United States"; or (2) "resulted in a

19   decision that was based on an unreasonable determination of the facts in light of

20   the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[7]

21         In applying the foregoing standards, federal courts look to the last reasoned

22   state court decision.  See Smith v. Hedgpeth, 706 F.3d 1099, 1102 (9th Cir.), cert.

23   denied, 133 S. Ct. 1831 (2013).  "Where there has been one reasoned state

24   _____

25       [7]When a federal claim has been presented to a state court and the state court has denied
relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

26   of any indication or state-law procedural principles to the contrary.  Harrington v. Richter,

27   131 S. Ct. 770, 784-85 (2011); see also Johnson v. Williams, 133 S. Ct. 1088, 1094-96 (2013)
(extending Richter presumption to situations in which state court opinion addresses some, but not

28   all of defendant's claims).

1    judgment rejecting a federal claim, later unexplained orders upholding that

2    judgment or rejecting the same claim rest upon the same ground." <u>Ylst v.</u>

3    <u>Nunnemaker</u>, 501 U.S. 797, 803 (1991) (cited with approval in <u>Johnson v.</u>

4    <u>Williams</u>, 133 S. Ct. 1088, 1094 n.1 (2013)); <u>Cannedy v. Adams</u>, 706 F.3d 1148,

5    1158 (9th Cir. 2013) (it remains Ninth Circuit practice to "look through" summary

6    denials of discretionary review to the last reasoned state-court decision – whether

7    those denials are on the merits or denials of discretionary review), <u>as</u>

8    <u>amended on denial of rehearing</u>, 733 F.3d 794 (9th Cir. 2013), <u>cert. denied</u>, 134 S.

9    Ct. 1001 (2014).

10        However, to the extent no such reasoned opinion exists, courts must conduct

11   an independent review of the record to determine whether the state court clearly

12   erred in its application of controlling federal law, and consequently, whether the

13   state court's decision was objectively unreasonable.  <u>Delgado v. Lewis</u>, 223 F.3d

14   976, 982 (9th Cir. 2000), <u>abrogated on other grounds</u>, <u>Lockyer v. Andrade</u>, 538

15   U.S. 63, 75-76 (2003); <u>see also</u> <u>Harrington v. Richter</u>, 131 S. Ct. 770, 784 (2011)

16   ("Where a state court's decision is unaccompanied by an explanation, the habeas

17   petitioner's burden still must be met by showing there was no reasonable basis for

18   the state court to deny relief."); <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1402 (2011)

19   ("Section 2254(d) applies even where there has been a summary denial.") (citation

20   omitted).

21        When it is unclear whether deference under the foregoing standards applies,

22   federal habeas courts can deny writs of habeas corpus under Section 2254 by

23   engaging in a *de novo* review.  <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 390 (2010).

24   When a state court's adjudication of a claim on the merits results in a decision

25   contrary to or involving an unreasonable application of clearly established federal

26   law or is based on an unreasonable determination of the facts, or when it is clear

27   that the state court has not decided an issue, review is also *de novo*.  <u>Panetti v.</u>

28   <u>Quarterman</u>, 551 U.S. 930, 953 (2007); <u>Hurles v. Ryan</u>, 706 F.3d 1021, 1030 (9th

8

1  Cir. 2013), <u>petition for cert. filed</u>, 82 U.S.L.W. 3009 (June 17, 2013) (No. 12-
2  1472, 12A970).

3       When a claim presented in a federal habeas petition is unexhausted, a
4  federal habeas court may deny relief when it is perfectly clear that the applicant
5  does not raise even a colorable federal claim.  <u>See</u> <u>Cassett v. Stewart</u>, 406 F.3d
6  614, 623-24 (9th Cir. 2005), <u>cert. denied</u>, 546 U.S. 1172 (2006).

7  **V.   DISCUSSION**[8]

8       **A.   Petitioner Is Not Entitled to Habeas Relief Based Upon His**
9            **Challenges to the Sufficiency of the Evidence**

10      Petitioner contends that he is entitled to federal habeas relief because the
11  evidence was insufficient to support his assault with a deadly weapon and
12  attempted robbery convictions.  These claims lack merit.

13            **1.   Pertinent Law**

14      On habeas corpus, the court's inquiry into the sufficiency of evidence is
15  limited in that it is subject to two layers of judicial deference.  <u>Coleman v.</u>
16  <u>Johnson</u>, 132 S. Ct. 2060, 2062 (2012) (per curiam).

17      First, on direct appeal, "it is the responsibility of the [trier of fact] – not the
18  court – to decide what conclusions should be drawn from evidence admitted at
19  trial.  A reviewing court may set aside the [trier of fact's] verdict on the ground of
20  insufficient evidence only if no rational trier of fact could have agreed with the
21  [trier of fact]."  <u>Id.</u>  (quoting <u>Cavazos v. Smith</u>, 132 S. Ct. 2, 4 (2011) (per
22  curiam)); <u>see</u> <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (standard of review on
23  sufficiency of the evidence claim is whether, "after viewing the evidence in the
24  light most favorable to the prosecution, *any* rational trier of fact could have found
25  the essential elements of the crime beyond a reasonable doubt.") (emphasis in

26

27
       [8]The Court has read, considered and rejected on the merits all of petitioner's contentions.
28  The Court discusses petitioner's principal contentions herein.

1   original).  "[T]he only question under <u>Jackson</u> is whether [the trier of fact's]

2   finding was so insupportable as to fall below the threshold of bare rationality."

3   <u>Coleman</u>, 132 S. Ct. at 2065.

4         Second, on habeas review, "a federal court may not overturn a state court

5   decision rejecting a sufficiency of the evidence challenge simply because the

6   federal court disagrees with the state court.  The federal court instead may do so

7   only if the state court decision was 'objectively unreasonable.'"  <u>Coleman</u>, 132 S.

8   Ct. at 2062, 2065 (state court determination that trier of fact's finding was not so

9   insupportable as to fall below the threshold of bare rationality is entitled to

10  considerable deference on habeas review) (citations omitted); <u>see</u> <u>Juan H. v. Allen</u>,

11  408 F.3d 1262, 1274-75 (9th Cir. 2005) (as amended) (on federal habeas review,

12  relief may be afforded on sufficiency of the evidence claim only if state court's

13  adjudication of such claim involved unreasonable application of <u>Jackson</u> to the

14  facts of the case), <u>cert. denied</u>, 546 U.S. 1137 (2006).[9]

15        Sufficiency of the evidence claims are judged by the elements defined by

16  state law.  <u>Jackson</u>, 443 U.S. at 324 n.16.

17              **2.   Assault with a Deadly Weapon Conviction**

18        Petitioner contends that the evidence was insufficient to support his

19  conviction for assault of Garate with a deadly weapon.  The California Court of

20  Appeal – the last state court to issue a reasoned decision addressing the merits of

21  this claim – rejected it.  (Lodged Doc. 1 at 6-7).  Petitioner is not entitled to federal

22  habeas relief on this claim.

23        In California, the elements of assault with a deadly weapon are:  (1) the

24  defendant committed an assault upon the person of another; and (2) he committed

25  the assault with a deadly weapon or instrument.  Cal. Penal Code § 245(a)(1).  An

26  

27      [9]The California standard for determining the sufficiency of evidence to support a
    conviction is identical to the federal standard enunciated by the United States Supreme Court in

28  <u>Jackson</u>.  <u>People v. Johnson</u>, 26 Cal. 3d 557, 576 (1980).

1   assault is "an unlawful attempt, coupled with a present ability, to commit a violent
2   injury on the person of another."  Cal. Penal Code § 240.  A "deadly weapon" is
3   "any object, instrument, or weapon which is used in such a manner as to be
4   capable of producing and likely to produce, death or great bodily injury."  People
5   v. Aguilar, 16 Cal.4th 1023, 1028-29 (1997) (citation omitted).  Here, the Court of
6   Appeal reasonably determined that the evidence was sufficient to convict
7   petitioner of assaulting Garate with a deadly weapon.

8        First, when viewed in the light most favorable to the prosecution, the
9   evidence was sufficient to establish that petitioner attempted and had the present
10  ability to commit a violent injury on Garate.  As the Court of Appeal explained:

11       [Petitioner] came to within a few feet of Estrada and Garate where he
12       spoke threateningly ("Where you from?" and "This is 38") and
13       exposed the knife but also, according to Gomez's eyewitness
14       testimony, "flicked" the blade outward and held the knife with palm
15       facing downward.  At that distance, and wielding the knife in such a
16       manner, [petitioner] had the present ability to inflict violent injury on
17       Garate.  [Petitioner] then proceeded to chase Garate around the
18       driveway and follow him to his car, during which time he came,
19       again, within a few feet of Garate . . . The evidence suggests that he
20       had the knife while he chased Garate, because he still held it after
21       Garate fled and he demanded Estrada's gold chain.

22  (Lodged Doc. 1 at 7).  This Court agrees that the evidence summarized above was
23  sufficient to enable a rational trier of fact to conclude that petitioner assaulted
24  Garate.

25       Second, the evidence was sufficient to establish that petitioner assaulted
26  Garate with a "deadly weapon."   A knife qualifies as a "deadly weapon".  See
27  Hockenberry v. United States, 422 F.2d 171, 173 (9th Cir. 1970) ("A knife is . . . a
28  'deadly weapon'" under California Penal Code section 245); Gonzalez v.

1  Harrington, 2009 WL 1658123, *11 (C.D. Cal. June 11, 2009) (evidence sufficient

2  to support conviction for assault with a deadly weapon where petitioner moved

3  toward victim while pointing knife).  As noted above, petitioner wielded a knife

4  with the point facing outward after speaking to Garate in a threatening manner,

5  and continued to wield the knife while chasing Garate to his car.  A rational trier

6  of fact could reasonably conclude based on the foregoing facts that petitioner

7  assaulted Garate with a deadly weapon – a knife capable of inflicting violent

8  injury.

9         The California Court of Appeal's rejection of petitioner's challenge to the

10  sufficiency of the evidence to support his assault with a deadly weapon conviction

11  was not contrary to, or an objectively unreasonable application of, any clearly

12  established federal law.  Nor was it based upon an unreasonable determination of

13  the facts in light of the evidence presented.  Accordingly, petitioner is not entitled

14  to relief on this claim.

15                    **3.    Attempted Robbery Conviction**

16         Petitioner contends that the evidence was insufficient to support his

17  attempted robbery conviction.  Although it is not clear that this claim has been

18  exhausted and although it may be procedurally defaulted (see Answer at 13-16),

19  this Court nonetheless exercises it discretion to address this claim on its merits

20  under a *de novo* standard of review as it is perfectly clear that the claim is not

21  colorable.[10]

22  _____

23        [10]As noted above, the California Supreme Court summarily rejected the habeas petition
    containing this claim (and other claims) with citations to Duvall, Waltreus, Swain and Lindley.

24  Such decision does not specify which rule(s) applies to which claim(s), rendering it ambiguous.
    See Washington v. Cambra, 208 F.3d 832, 833-34 (9th Cir.), cert. denied, 531 U.S. 919 (2000).

25  Claims rejected under Waltreus, are generally deemed exhausted (see Carter, 385 F.3d at 1198),

26  whereas claims rejected under Duvall and Swain may or may not be exhausted depending upon
    whether they were presented to the California Supreme Court with as much particularity as

27  practicable.  See Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986).  Moreover, although

28                                                                    (continued...)

1      **a.    Additional Pertinent Law**

2          "Robbery is 'the felonious taking of personal property in the possession of

3      another, from his person or immediate presence, and against his will,

4      accomplished by means of force or fear.'"  See People v. Tafoya, 42 Cal. 4th 147,

5      170 (2007) (quoting Cal. Penal Code § 211), cert. denied, 552 U.S. 1321 (2008).

6      A robber must have the specific intent permanently to deprive the person of his

7      property.  People v. Lewis, 43 Cal. 4th 415, 464 (2008), cert. denied, 555 U.S.

8      1155 (2009).  Attempted robbery requires proof of (1) the specific intent to

9      commit robbery (i.e., the intent permanently to deprive the victim of personal

10     property); and (2) a direct but ineffectual act done toward accomplishing the

11     intended robbery.  See People v. Lindberg, 45 Cal. 4th 1, 24 (2008), cert. denied,

12     557 U.S. 908 (2009).  The latter element requires conduct that goes beyond "mere

13     preparation" and shows that the defendant is putting his plan into action.  People

14     v. Watkins, 55 Cal. 4th 999, 1021 (2012), cert. denied, 134 S. Ct. 471 (2013).

15         Albeit not technically a "defense," a defendant's voluntary intoxication can

16     negate the element of specific intent.  See Cal. Evid. Code § 22;[11] People v. Boyer,

17     ────────────────

18         [10](...continued)

19     claims rejected solely under Lindley are generally procedurally defaulted because Lindley has
       been found to be an independent and adequate basis under state law for a decision (see Carter,

20     385 F.3d at 1197-98), where, as here, the California Supreme Court has denied a petition with
       citations to Lindley and other cases (Swain and Duvall) which do not clearly provide an

21     independent and adequate basis under state law for the decision (see Cross, 676 F.3d at 1178

22     (noting Ninth Circuit has held that Swain does not constitute independent and adequate state
       ground); Bodnar v. Davis, 2014 WL 794575, *20 (C.D. Cal. Feb. 26, 2014) (noting that it is

23     unclear whether Duvall is an adequate and independent procedural bar)), courts have declined to
       find a procedural default.  See, e.g., Reddick v. Felker, 2009 WL 3165371, *4 n.4 (E.D. Cal.

24     Sept. 29, 2009).

25
       [11]California Evidence Code section 22 provides:
26

27         (a) No act committed by a person while in a state of voluntary intoxication is less
           criminal by reason of his or her having been in that condition.  Evidence of voluntary

28
                                                                                   (continued...)

                                              13

1   38 Cal.4th 412, 469 (2006) (voluntary intoxication not defense to crime as such,

2   though may be relevant to whether defendant formed specific intent necessary for

3   its commission), cert. denied, 549 U.S. 1021 (2006); People v. Hughes, 27 Cal.4th

4   287, 341 (2002) (voluntary intoxication relevant to whether defendant formed

5   specific intent to commit burglary); People v. Williams, 26 Cal.4th 779, 789

6   (2001) ("voluntary intoxication [can] only negate specific intent and not general

7   criminal intent.").

8                    **b.    Analysis**

9           Here, the evidence was more than sufficient to support the jury's guilty

10   verdict on the attempted robbery charge.

11          First, the record contains ample evidence from which the jury could

12   reasonably have concluded that petitioner intended permanently to deprive Estrada

13   of his chain.  Petitioner spoke to Estrada in a threatening manner, displayed the

14   knife to him, and commanded Estrada to give petitioner his chain with the knife

15   still in his hand.  While petitioner suggests that he did not have the specific intent

16   to rob Estrada due to his intoxication, the jury, as detailed in Part VB, *infra*, was

17   presented with this theory and reasonably rejected it.  It is not for this Court to

18   reweigh the evidence.  See Cavazos, 132 S. Ct. at 7 n.* (reweighing facts

19   precluded by Jackson); United States v. Nevils, 598 F.3d 1158, 1170 (9th Cir.

20   2010) (in assessing sufficiency of the evidence claim, it is not court's function to

21

22   [11](...continued)
        intoxication shall not be admitted to negate the capacity to form any mental states for the

23      crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation,
        deliberation, or malice aforethought, with which the accused committed the act.

24

25      (b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not
        the defendant actually formed a required specific intent, or, when charged with murder,

26      whether the defendant premeditated, deliberated, or harbored express malice
        aforethought.

27

28      (c) Voluntary intoxication includes the voluntary ingestion, injection, or taking by any
        other means of any intoxicating liquor, drug, or other substance.

                                        14

1   reweigh the evidence) (citation and quotation marks omitted).  Irrespective of

2   petitioner's assertedly intoxicated state, the foregoing facts are sufficient to

3   support a jury's determination that petitioner intended permanently to deprive

4   Estrada of his chain.

5        Second, the evidence is also sufficient to establish that petitioner went well

6   beyond "mere preparation" and committed direct, albeit ineffectual acts toward

7   accomplishing the intended robbery.  More specifically, his acts of approaching

8   Estrada, displaying a knife and commanding Estrada to give him Estrada's chain,

9   constitute direct, albeit ultimately unsuccessful acts toward accomplishing his

10  robbery of Estrada.  <u>See, e.g.</u>, <u>People v. Anderson</u>, 1 Cal. 2d 687, 690 (1934)

11  (when defendant approached robbery location, pulled out weapon when

12  approximately two feet away, and thereafter accidentally, or otherwise, fired gun,

13  this constituted direct, but ineffectual act toward intended robbery); <u>People v.</u>

14  <u>Vizcarra</u>, 110 Cal. App. 3d 858, 862 (1980) (approaching liquor store with

15  weapon and attempting to hide in pathway immediately adjacent to store when

16  observed by customer sufficient direct acts toward accomplishment of robbery).

17       In short, there is ample evidence to support the jury's verdict that

18  petitioner attempted to rob Estrada, and it is perfectly clear that this sufficiency of

19  the evidence claim is not colorable.  Accordingly, petitioner is not entitled to relief

20  on this claim.

21       **B.     Petitioner Is Not Entitled to Habeas Relief Based Upon His**

22              **Ineffective Assistance of Counsel Claim**

23       The Petition, construed liberally in light of petitioner's state court briefing,

24  claims that petitioner's trial counsel was ineffective in failing adequately to

25  explain to the jury that petitioner was intoxicated and did not intend to rob Estrada

26  of the gold chain.  Although it is not clear that this claim has been exhausted, this

27  ///

28  ///

15

1    Court nonetheless exercises it discretion to address this claim on its merits under a

2    *de novo* standard of review as it is perfectly clear that the claim is not colorable.[12]

3               **1.    Pertinent Law**

4          The Sixth Amendment of the United States Constitution as applied to the

5    states through the Fourteenth Amendment guarantees a state criminal defendant

6    the right to effective assistance of counsel at trial.  Evitts v. Lucey, 469 U.S. 387

7    (1985).  To warrant habeas relief due to ineffective assistance of counsel, a

8    petitioner must demonstrate that:  (1) counsel's performance was deficient; and

9    (2) the deficient performance prejudiced his defense.  Strickland v. Washington,

10    466 U.S. 668, 687-93 (1984); see also Smith v. Robbins, 528 U.S. 259, 285-86

11    (2000) (Strickland standards apply to ineffective assistance of appellate counsel

12    claims).  As both prongs of the Strickland test must be satisfied in order to

13    establish a constitutional violation, failure to satisfy either prong requires that a

14    petitioner's ineffective assistance of counsel claim be denied.  Strickland, 466 U.S.

15    at 687, 697 (no need to address deficiency of performance if lack of prejudice is

16    obvious); Hein v. Sullivan, 601 F.3d 897, 918 (9th Cir. 2010) (a court can deny a

17    Strickland claim if either part of the test is not satisfied), cert. denied, 131 S. Ct.

18    2093 (2011).  Further where, as here, there has been a state court decision

19    rejecting a Strickland claim, review is "doubly deferential."  Richter, 131 S. Ct. at

20    788 (citing Knowles v. Mirzayance, 556 U.S. 111, 123-24 (2009)).  "The pivotal

21    question is whether the state court's application of the Strickland standard was

22    unreasonable."  Richter, 131 S. Ct. at 785; 28 U.S.C. § 2254(d).  "[E]ven a strong

23    case for relief does not mean the state court's contrary conclusion was

24    unreasonable."  Richter, 131 S. Ct. at 786.  The range of reasonable Strickland

25    applications is "substantial."  Id. at 788.

26    ///

27     

28           [12]See supra note 10.

### 2. Analysis

Petitioner's counsel was not ineffective in defending petitioner on the attempted robbery charge. To the contrary, the record demonstrates that petitioner's counsel vigorously, albeit unsuccessfully presented the jury with the defense theory that petitioner was intoxicated and did not intend to rob Estrada.

During her opening statement, petitioner's counsel explained that petitioner was very drunk at the time of the events. (RT 142, 144). She elicited or attempted to elicit from virtually every witness facts evidencing petitioner's intoxication (*e.g.*, that he had bloodshot eyes, slurred speech, and smelled of alcohol). (RT 187 [cross-examination of Jesus Estrada]; RT 215-17 [cross-examination of Sergio Gomez]; RT 245 [cross-examination of Cinthia Hernandez]; 254-55, 258-59 [cross-examination/recross-examination of Mauricio Ruiz]; RT 322-26 [direct examination of Rita Reynoso]; RT 337 [direct examination of Robert Deamer]). Petitioner's counsel argued that the trial court should instruct the jury regarding voluntary intoxication and the court did so. (RT 354-59, 382-83; CT 124-25). Finally, in closing argument, petitioner's counsel focused on the issue of whether or not petitioner had the requisite specific intent given petitioner's intoxication. (RT 415-17).

In short, the record belies petitioner's assertion that his counsel failed adequately to explain to the jury that petitioner was intoxicated and did not intend to rob Estrada. Although counsel's efforts ultimately proved to be unsuccessful, this does not alter the fact that she ably defended petitioner. It is perfectly clear that petitioner's instant ineffective of counsel claim is not colorable. Accordingly, petitioner is not entitled to relief on this claim.

///
///
///
///

**VI.   CONCLUSION**

IT IS THEREFORE ORDERED:  (1) the Petition is denied and this action is dismissed with prejudice; and (2) the Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

DATED:   March 25, 2014

_____
/s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE